Case No. 14-1876 and Case No. 15-2126 Philip Brown v. Cindi Curtin et al. Oral argument not to exceed 15 minutes per side. Mr. Paul Hudson for the appellant. Good morning. May it please the court, Paul Hudson for the petitioner Philip Brown and with me is co-counsel Kevin Laidler. Your Honor, I'd like to reserve three minutes for rebuttal. Your Honor, the procedural history of this case is a labyrinth of complexity. We're looking at EDPA's monster. It's a nightmare of a law school exam hypothetical. Hopefully today I can clarify and simplify a number of those issues for the court because I do think there are some shortcuts on the path that all lead to a full review on the merits by this court. But I thought I'd start by going right to the nub of the case. Stripped down at its core, this case is about two sets of straightforward and really stunning constitutional errors. The first relates to the denial of cross-examination into the pending felony charges of the prosecution's key witness. And then the second set all relate to the trial court's erroneous instruction that there were no fingerprints found on the knife used in the incident. And here's why both of those sets were so devastating to Mr. Brown's defense. First, with respect to Brian Weigel's testimony, the housemate with the pending CSC charges. He was the centerpiece of their case, specifically as it relates to premeditation. And one piece of testimony in particular was a new piece of testimony at trial, and it was devastating to Brown. And that was that Brown was supposedly wearing a trigger release when he saw him in the house. And the obvious implication there was if he took the time to put on a trigger release, then this wasn't a heat-of-the-moment act of self-defense. And the prosecution hammered that during closing and rebuttal. They mentioned it 21 times. I went back and counted those up, including the very opening of their closing argument. This was their theme of the case, that this was not a hot-blooded act of self-defense. This was, he waited in prey, waited for his… I don't mean to interrupt, but I'm a city boy from the East, and on this question of premeditation, how long does it take without a trigger release to shoot somebody using a bow and arrow? I'm not a hunter, but to shoot someone with a bow and arrow, it's quick. Well, how quick? I don't think there's testimony in the record, but it's a matter of seconds. Is this just a regular bow? I know that there are all different kinds of bows. A regular bow is my understanding, but there was an O.J. moment, if you will, at this trial where they had Mr. Brown try on the trigger release, and it took him up to 30 seconds to try it on. Well, an O.J. moment, but really, how much more time would it take to shoot someone with a bow and arrow using a trigger release as opposed to without one? If the bow and arrow is in another room somewhere, and you've got to go in there and close the door or pull the arrow out of the quill, what's the marginal increase in time for premeditation? Significant. What Mr. Brown testified was that the 300-pound Randy Pardee picked up the knife off the shelf. Mr. Brown sprinted back to the back of the house where they're in this utility room. The bow and arrow was there. He turned and fired. Immediate, quickly. The point of going into all of this is that this was significantly damaging testimony. This wasn't the only evidence of premeditation, was it? This was the primary evidence of premeditation. Wouldn't Mr. Brown's conduct at a later point in the exchange, couldn't that be used as an inference that the initial acts were premeditated? I'm talking about running after Mr. Pardee and breaking down the door and that sort of thing. If he was seeking only to defend himself, it doesn't seem that that would be what happened. Mr. Brown's testimony was consistent with the physical evidence. It was consistent with the evidence in the case. The jury had to make a determination. The way the prosecution presented it... That didn't answer my question. I'm sorry, Your Honor. My question was whether Mr. Brown's subsequent conduct could be used to infer premeditation. The prosecution certainly tried to use it to paint that picture, but I don't think that's the inquiry here. The question is whether there was actual prejudice. It might be relevant to the ultimate question of if you do have a confrontation clause violation, what difference it made. Yes, and what Van Arsdale instructs us there is we assume the full damaging potential of the cross-examination that Mr. Brown didn't get to do. We assume that the jury's inference was the reason for all this new testimony, the trigger release, sharpening the knife beforehand, elaboration by Weigold, was that he was trying to curry favor with the prosecutors. He thought that he should say anything he could to get himself off. That's what Van Arsdale tells us there. Van Arsdale involves a situation where not only had a benefit had already been given, and that could be admitted into evidence, correct? Van Arsdale, yes. Davis and Alford, no. There was no suggestion of a deal in place. The point of those cases is the defendant is constitutionally entitled to explore that through cross-examination, even if the witness says, I don't expect any favorable treatment from the prosecutor. But certainly there is less probative value attached to a benefit that is not... The only inference that could arguably be drawn in this case is that Mr. Weigold hoped for a benefit. And that's not really an evidentiary inference. It's other than the jury deciding that they disbelieved Weigold. And Van Arsdale instructs us, because there was a clear violation of Van Arsdale-Davis-Alford, that we don't sort of have to go... I'm not really asking you about Van Arsdale. I'm asking you about the evidentiary record in this case. And the probative value of that... Again, what you get out of it factors in to the harmlessness analysis. And what you would have gotten out of it here would have been the jury, the potentiality that the jury might disbelieve Mr. Weigold on that point. Is that right? Not might, but Van Arsdale tells us we're to assume that that landed. That the reason he's slanting his testimony against Brown, coming up with new facts, is because he hoped for favorable treatment. Van Arsdale does deal with that, but it also deals with a benefit already granted. And Davis and what is the other case? Alford. No benefit already granted in those cases, Your Honors. And so the question here is, what was the actual prejudice in this case? And we know that the prosecution relied heavily on Brian Weigold. He was the key witness. This testimony about the trigger release, that's the only place they got it from. So his testimony, I submit, can't be deemed harmless there. If I could briefly address... Yes, Your Honor. One concern that I have is whether there was procedural default. Yes, Your Honor. My reading of the Michigan Court of Appeals opinion was that it relied on procedural default, on the failure to be expressed about this being a Confrontation Clause claim in the trial court. Can you address that? Yes, Your Honor. That was a, the question of the sufficiency of his objection to preserve a constitutional argument, like a Confrontation Clause Van Arsdale argument, is itself a federal question. And the rule there is that it just has to be an ample and timely objection. And there's no magic words requirement. The trial counsel was not required to say the words Van Arsdale or Confrontation Clause. The state court, as I understand it, the state courts of Michigan view this as a critical requirement under their law in terms of the nature of the objection that has to be filed. So you're saying we, as a federal court, ignore that, or what? Yes. It's not, that question is not independent of the federal question of whether he waived that by failing to make a timely objection. And his objection there, by the way, I mean, it said everything that you would want it to in substance, that he was, there was an entire colloquy on this, there was a voir dire on this, and he said, and this is at 23-9, page 1009, this is as to whether there's any motivation for bias in his testimony. If he's been offered a deal, promised leniency. Detectives have talked to him about that. That's clearly biased. So in substance, he made the objection, preserved it, and then the Michigan Court of Appeals determination that he waived it. Do you have any record, I'm sorry if I missed it, what was the actual outcome of the case against him? I'm sorry, Your Honor, the outcome of, oh, against Mr. Weigel? Yes. One charge was dismissed. The others, the prosecution dropped. He ultimately faced no time for any of this, even though he was facing 20 years plus. But you don't have, and it had been pending for two years at the time of the trial against Mr. Brown. Correct. So it would appear to have been a fairly weak case. Is that a fair characterization? Well, the other characterization would be that, you know, it's pending a long time, and they're going to use Mr. Weigel. My point simply is that post-conviction counsel has never developed significant information to support the somewhat inchoate or I'm not going to say speculative suggestion that use of this evidence at trial would have redounded significantly to the benefit of Mr. Brown. And under the Supreme Court's cases, that's not true. I understand that, but I'm asking you about the post-conviction. Post-conviction counsel obviously did a lot of good work in this case, including you, sir, frankly. But apparently no one's ever been able to develop a secret deal or an implicit understanding or anything of the sort. We just have charges of abuse of a minor that's been pending for two years, and ultimately the prosecution either fails or is dismissed. That's correct, and it's not dispositive under Ann Arsdell because it's the – he's a – I understand that. I'm simply focused on the state of the record post-conviction. Yes, Your Honor. If I could briefly address the second set of errors, and that's the no fingerprints instruction, why that was so devastating. I hope it's at least somewhat obvious, but it's not often we get such a clear window into the jury's actual deliberations in a case. When we do harmless error analysis, sometimes we have to guess about what's important to the jury.  The jury told us through a series of questions during their deliberations that this issue of whether Randy Partey's – the decedent's fingerprints were on the knife was a crucial issue to them, perhaps the crucial issue to them in deciding guilt or innocence. They asked the first question. The judge said that there was no report in the record. They went back and deliberated for three and a half hours, and then they came back with the second round of questions where they're asking it again. Were Randy Partey's – was there evidence about Randy Partey's fingerprints on the knife? And the judge erroneously instructed that there were no fingerprints found on the knife. That's true. So what should he have said in your mind? There was no testimony in the record about Randy Partey's fingerprints on the knife because the instruction – when a jury asks, was there testimony about Randy Partey's fingerprints on the knife? And the response is there were no fingerprints found on the knife. The judge is telling the jury that Randy Partey's fingerprints were not on the knife, which is obviously an important issue to them in deciding whether he was the aggressor or not. So I don't think we're ever going to have a clearer indication. Do you think that the jury is going to draw the fine distinction that you just drew? I don't think there's any fine distinction at all. Their question was, were Randy Partey's fingerprints on the knife? The judge said there were no fingerprints found on the knife. I mean, that's – I don't know what other implication – whatever other inference there could be other than another equally bad inference that, you know, maybe he wiped down the knife or something like that. Well, I mean, it's true that there were no fingerprints on the knife, right? Either Brown or Partey. There was no testimony or evidence either way whether there were fingerprints on the knife or not. And so when the judge tells the jury affirmatively there were no fingerprints found on the knife, that's suggesting that it was tested, they looked for Randy Partey's fingerprints on it, and they weren't there. Isn't it a fundamental problem, though, that the trial counsel for your client stipulated to this? There was a factual dispute about whether he did stipulate. Even if you accept that the – What source does that arise? I thought it was a claimed basis at some point, an ineffective assistance claim. So where's the factual dispute about whether there was a stipulation come from? The trial counsel submitted an affidavit in post-conviction proceedings that he did not, in fact, stipulate to it. And what happened was they had an off-the-record sidebar. The judge ruled. And he said, you know, the judge had ruled, and so I initialed the instruction. But even if – I somewhere read – I can't remember where in all the briefs or wherever, but somewhere I read that he felt somehow coerced by that situation or – What he said was he felt overpowered, that the judge made his call, and that was it. But even if we accept that trial counsel did stipulate or fail to object to that, that's about as clear a case of ineffective assistance of counsel as you're going to have. That's your trial counsel stipulating to an instruction that you were, you know, on a key piece of evidence that was not in the record. And, by the way, Brown was not there. He had a right to a presence at the critical stage there. So we thank you. We've taken you well above. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court, Raina Corbachus from the Michigan Attorney General's Office, on behalf of Respondent Appleby Cindy Curtin. As this Court knows, habeas relief is an extraordinary remedy. The district court, in a very detailed opinion, denied that remedy to Petitioner. The state asks this Court to affirm the denial. There were a number of issues certified on appeal in this case, and it does have a long procedural history. And I'd like to focus primarily on the two that opposing counsel mentioned, Petitioner's confrontation claim with respect to Brian Weigold and the stipulated to response to the jury question that the trial court gave. As I've noted in my brief, the confrontation claim with respect to Weigold is defaulted, and this Court could deny relief on that basis. The state also believes, as indicated in the briefing, that the Michigan Court of Appeals did not unreasonably find that there was no confrontation clause violation. But even if there was a confrontation clause violation in this case, the district court correctly found that any error was harmless. The evidence in this case was truly overwhelming. It showed that the victim, Randy Party, was unarmed when he left Weigold's room. It showed that seconds after he left Weigold's bedroom, he was shot with an arrow. Evidence showed that Petitioner then immediately ran toward the victim with a knife, stabbed him once in the side as he was leaning against the doorway. There was evidence that there were no aggressive moves or words by the victim after he was stabbed by the arrow. There was evidence that Mr. Weigold at one point grabbed the Petitioner in an attempt to stop him from continuing the attack, and the Petitioner swung a knife at Weigold, who was also unarmed. There was evidence that the victim ran to the bathroom, barricaded himself inside, and the Petitioner kicked the door down, stabbed him again, this time in the chest. After the attack, there was evidence that Petitioner threw the knife in the bathroom garbage. There was no evidence of a struggle between the victim and Petitioner after the victim exited Weigold's bedroom. And there was blood drop evidence indicating that the victim was moving backward after he was struck with the arrow. In addition to all this, there was Petitioner's conduct after the killing where he threw, as I mentioned earlier, the knife in the garbage. He threw the bow, the quiver, and other items, including the trigger release, over the fence. He warned Weigold to keep his mouth shut. Doesn't most of this evidence that you're mentioning come from Weigold? And so isn't the question of whether Weigold had an incentive to develop the evidence or lie about the evidence so critically important to protecting the Confrontation Clause rights of the defendant? A lot of the evidence does come from Weigold, but there was physical evidence, too, that supported the prosecution's theory. And Petitioner's own conduct after the killing where he tried to discard the bow and the arrow and everything that he used, where he tried to dump the knife, where he warns Weigold to keep his mouth shut, where he flees to Georgia in a car with an amount of money, where he discards his bloody clothing, he buys new clothes. So there's more than just the testimony of Weigold. And the fact that counsel was precluded from questioning him about an issue, these pending charges, where there was absolutely no evidentiary support for them. It was purely speculative. There were pending charges. There were pending charges, that's correct. There were pending charges, but the trial court didn't summarily deny the request. Counsel was able to question Weigold outside of the presence of the jury whether or not he had ever talked to the prosecutor about the charges, whether he ever had a hope of expectation of getting any treatment. Why wouldn't that be evidence and questioning, that the jury should be able to hear and make their own determination whether Weigold is then lying to say, no, I was never offered a deal, or I was never told I would get an easier situation? Well, it's the state position that the Supreme Court has never clearly established a right to, or has never clearly addressed that situation. Tell me about the cases that Mr. Hudson referred to. The cases that he referred to, Davis v. Alaska, that case didn't involve pending charges. That was a case where the defense counsel was precluded from asking a juvenile delinquent who was on probation about whether or not he had a bias to avoid revocation of probation. And he also felt like he was perhaps a suspect in the case. So there was some basis for the questioning in that case. That case is distinguishable. The other case, Delaware v. Van Ardstel, and that case is very interesting. There was a third case he referred to. I know about Van Ardstel. I believe the third case was Alford v. U.S. I couldn't tell whether he was saying Albert or Alfred. I believe it's Alford, and that is a direct appeal case by the Supreme Court. And in that case, I think the problem that the Supreme Court had there was that there was a summary denial by the trial court. It was never established whether there was any kind of discussion or whether the witness had any type of hope of a deal or anything. It was a very summary denial. In this case, the trial court didn't summarily deny the request. It allowed counsel to put on the record to try to establish a basis for asking about these charges, and there simply was no basis. Weigel didn't testify that there was any hope, any type of discussion, and also the prosecutor in this case, as an officer of the court, stated that there was absolutely no talk whatsoever between the prosecutor's office or the police and Weigel regarding these pending charges. It was an accurate statement to say that the only thing from which the jury could arguably draw any inference at all about this is if they chose not to believe Weigel. I'm sorry, can you repeat that? Well, I mean, they could disbelieve Weigel on that point. They were free to decide whether he was telling the truth, but there wouldn't really be any evidence in the record, and so it's kind of arguable in my mind whether the preclusion of that sort of evidence, well, is in fact state error, but whether it would implicate the confrontation clause. Is the state's position that the Supreme Court has never really squarely addressed this particular issue, and under that circumstance, it can't be said that what the state court did here, the Michigan Court of Appeals, was contrary to any clearly established Supreme Court precedent. That depends, then, on whether or not we're applying the contrary to or unreasonable determination test under 2254D on theory that there was a merits determination by the state court of appeals, but the state court of appeals reviewed only for plain error, right? It's our position that they did also, in the context of addressing the claim, they did a merits adjudication. They talked about Van Arndt's Doll. They did a full merits adjudication in this case regarding the underlying claim. It's similar to what the court of appeals did in the Fleming decision. They did both a default and a merits adjudication, and it's a lengthy merits adjudication where they talked about the correct principles involved, the correct Supreme Court law, and just did a lengthy merits adjudication. So the state court did a merits adjudication in this case with respect to the confrontation claim. What is the law in Michigan in terms of whether or not the confrontation clause claim was adequately preserved by the mechanism that this trial defense lawyer used? In other words, was there a procedural default according to the Michigan court of appeals or not, and why?  Because counsel didn't specifically claim confrontation violation. It wasn't necessarily clear that that's what the claim was, and in order to preserve... What else would the claim be other than a confrontation clause claim? Well, it could be error under the rules of evidence. It needs to be specified. You need to specify the basis for the objection. You mean you need to say the magic words confrontation clause? I mean, the defense lawyer said, I went across to examine Weigel to find out his bias. Why isn't that enough to invoke the confrontation clause in Michigan? Well, I don't know that it was unreasonable for the court of appeals to find that it wasn't. It would have been very easy to have said confrontation. Trial counsel didn't. But the people are all lawyers. The trial judge, the court of appeals judges, the defense counsel, they're all lawyers. It sounds to me that you're saying that Michigan says magic words are critical, and then your opponent here today has said that, well, it's a federal constitutional right, so we're not bound by state law. How would you respond to that? Well, there was discussion earlier or in the record about the rules of evidence, and there was a discussion between the prosecution and trial counsel about the rules of evidence and whether or not they were applicable to the objection. So I think the court of appeals wasn't unreasonable to find that it wasn't properly preserved. But even if this court disagrees and finds that it, in essence, was a confrontation objection, then we still have the question of harmless error. And the district court listed a great deal of evidence against him. The evidence was truly overwhelming. And the other basis for harmless error that the district court listed was the fact that the statements that Weigel made were very consistent with the statements that were made to police in the 911 call, and they occurred before he could come up with a reason to somehow slant his testimony and try to curry favor with the prosecution. So even if he was questioned about these charges, the district court correctly found that he could have been easily rehabilitated by the prosecution with the fact that his story didn't change from the beginning. I guess you're kind of challenged to decide whether you're going to go with the Michigan Court of Appeals or with the district court in this case. Well, as far as... Am I correct? Do you read the Michigan opinion to say to review for constitutional error on a plain error basis? Isn't that what they did? I mean, it's a little weird, but I don't read that as procedural default. The Michigan Court of Appeals opinion? Yeah. In other words, I guess my question is, is the analysis or is the outcome on the impeachment, the denied impeachment, any different whether you apply beyond a reasonable doubt or plain error review? It appears, at least it can be read, to give plenary review to the claim of a violation of the confrontation right. Well, it is the state's position that the Michigan Court of Appeals here did a merits adjudication on the confrontation claim. The district court in this case did not address the default with respect to that confrontation claim. It's our position that the district court was wrong to find that there was a confrontation violation to begin with. That was wrong. But the district court's finding with respect to harmless error was totally on point and exactly right. There was overwhelming evidence of guilt in this case. And at the very least, the district court's finding of harmless error should be affirmed. Would you say the same thing if the standard is beyond a reasonable doubt as opposed to Brecht? The district court? Yes. Yes, the standard is Brecht in collateral. Well, Brecht is not beyond a reasonable doubt. No, it's whether or not there was a substantial injurious impact on the jury's verdict. And the district court did apply the correct standard. There was a suggestion that the district court somehow applied an erroneous standard. But the district court cited Brecht. The district court was also well aware of Van Aardstel. That was cited in the opinion courts are presumed to know and follow the law. And the district court did everything right here in its analysis of harmless error. I do want to just briefly comment on the other point. Opposing counsel wants this court to consider trial counsels. And the question is whether or not trial counsel was ineffective for stipulating to the response. The Michigan Court of Appeals addressed that question, reasonably said no. Petitioner wants the court to consider the affidavit from nearly seven years after trial to suggest that somehow this wasn't a strategy. The district court properly did not consider that affidavit because it wasn't part of the state court record under Penn Holster. The trial attorney indicated that somehow he felt overpowered. Is the sidebar that was referred to by your adversary, is that in the record? It is not. No, it is not. Whatever discussion took place at the sidebar... The discussion which made counsel say he felt overborne is not in the record. That is not in the record, but his claim that he was overpowered, and I see my time is up. May I finish my response? His claim that he felt overpowered is entirely inconsistent with what is on the record. There's no evidence that he was pressured on the record. This was an experienced trial attorney. He vigorously defended Petitioner. He knew the facts. He was prepared. He wasn't afraid to object to other issues that came up throughout trial, before trial. And his own suggestion, years after the fact, that he was somehow deficient doesn't mandate a finding by this court that he was. And I've indicated cases that show that because Strickland is an objective standard, not a subjective standard, and it's the state's position that the Michigan Court of Appeals was entirely reasonable in finding that there was no ineffective assistance for that stipulation. Thank you. Your Honors, I promised some shortcuts on the procedural history, so I'll pick up there. On the second set of claims of errors, the ones relating to the no-fingerprints instruction, if we accept the state's position that those were not raised on direct appeal, and I think some of them were, the state concedes that they were all raised in the first 6500 motion, the first motion for post-conviction relief. And the Michigan Supreme Court's ultimate decision denying those claims said that it was because the defendant's motion for relief from judgment is prohibited by MCR 6.502G, which relates to successive motions for post-conviction relief. So the Michigan Supreme Court relied on a procedural bar unambiguously, but it plainly didn't apply. So it was an erroneous invocation of a procedural bar, and under the Post v. Bradshaw case 621F3-406, when a state erroneously relies upon its own rule of procedural default, the claim is not barred, and the result is a de novo review here on all of those claims relating to the supplemental instruction. That's also the case with respect to the Weigold claim. The Michigan Court of Appeals applied plain error review, and this court said, and Judge Moore said, in the Frazier v. Jenkins case, quote, plain error review is not equivalent to adjudication on the merits, which would trigger epidefference, and that relies on the White v. Mitchell case as well. So when there's an invocation of a procedural bar, like the Michigan Court of Appeals invoked here, they said you waived it, so we're reviewing this for plain error only. The result is a de novo review by this court. So under either of those paths, we have de novo review. Judge Gibbons, I feel like I didn't squarely address your question about what the jury was, what we assume that the jury inferred from, would have inferred from Weigold's pending convictions. And what those three Supreme Court cases tell us is that even if there's no deal in place, Weigold sitting there on the stand is thinking to himself, I have these pending charges with 20 years over my head. I'm going to tailor my statements here to the prosecution's case. I'm going to give them what they need because I'm hoping down the road that they'll cut me a break. That's what these cases... That was my understanding. I mean, it was just that that's not inconsistent with what I understood. Oh, good, Your Honor. Then I'll move on from that. The question here on whether the evidence in this case was overwhelming, respectfully, what the state is doing is retrying its case, and that's not the analysis. The analysis isn't whether they can sort of string together some other evidence that might amount to a conviction on a retrial. The question here is whether on this jury, what had a substantial and injurious effect on them. They told us with respect to the jury instruction, the no fingerprints instruction, that that was a crucial issue to them. On the Weigold issue, Van Arsdal instructs us that we're supposed to assume the full damaging potential of cross-examination. So we assume that the jury would have said, I don't believe that guy because he was just trying to cut himself a deal down the road. So we have those two errors. We have the presumption from Van Arsdal that this is a key witness here, and he was lying about his testimony, including about the trigger release, including about sharpening the knife, including about all of this. We assume sitting here, we don't have to parse to think about what they might have accepted, what they might not have accepted. Van Arsdal tells us the jury, we assume the jury would have fully discounted his testimony, not found him credible. So with those two errors, I mean, we have two, I submit, glaring errors, and we're never going to, for the no fingerprints instruction, I don't think we're ever going to have a clear indication from the mouth, from the pen of the jury itself, that this was a crucial, crucial fact for them. Did Mr. Brown have the burden of both of production and of proof, or only the burden of production under Michigan law on the affirmative defense of self-defense? Only production. Only production. Prosecution carried the burden of proving beyond a reasonable doubt that Mr. Brown did not act in self-defense. And so that meant they had to prove his lack of justification. And, you know, that's why these issues were so important, because one instructed the jury essentially the decedent never touched the knife. And the other, you know, the jury would have been able to infer that this trigger release testimony was fabricated. So with those errors, we submit that they are not harmless. And if the court has further questions, I'm happy to. We ask the court to grant habeas relief to Mr. Brown. Thank you very much, both of you. Thank you, Your Honors. The case has been submitted. Would the clerk call any remaining cases?